[Cite as *State v. Morris*, 2017-Ohio-1514.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2016-T-0026** |
| ROBERT J. MORRIS, II, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Warren Municipal Court, Case No. 2015 CRB 002518.

Judgment: Affirmed.

*Gregory V. Hicks*, Warren City Law Director, and *David G. Lake*, Assistant Law Director, 391 Mahoning Avenue, N.W., Warren, OH 44483 (For Plaintiff-Appellee).

*Michael A. Partlow*, 112 South Water Street, Suite C. Kent, OH 44240 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} Appellant, Robert J. Morris, II, appeals his conviction for misdemeanor domestic violence as being against the manifest weight of the evidence. We affirm.

{¶2} Appellant was charged with one count of domestic violence, a first-degree misdemeanor in violation of R.C. 2919.25(A). The complaint alleges that he knowingly caused, or attempted to cause, physical harm to his mother, Mary Lee Morris. A bench trial ensued. Appellant's mother, appellant, and Sergeant Peterson testified. Appellant

was found guilty and sentenced.

{¶3} Appellant raises one assignment of error:

{¶4} "The appellant's conviction is against the manifest weight of the evidence."

{¶5} A transcript of the trial cannot be provided because the trial court's electronic taping system malfunctioned. The record, therefore, consists of a statement of the evidence submitted at trial as approved by the trial court in accordance with App.R. 9(C). The statement of evidence provides:

{¶6} "Mary Morris, the alleged victim and mother of Defendant, was the first witness to testify on behalf of the State of Ohio. She stated that the incident which gave rise to the charges occurred at her home in Warren Township, Trumbull County, State of Ohio. On September 25, 2015, at around 2:00 AM, she was watching television in her home. The Defendant then came into the home and began discussing a dog owned by the witness which had fatally injured a cat that also lived on the property. The Defendant resides in a trailer located on the same property as the alleged victim. When the alleged victim got up and attempted to go into the kitchen, the Defendant hit her in the head and she fell to the ground. The witness testified that the Defendant hit her with a 'heavy hand.' The witness believed that she had been hit two times. When the witness tried [to] get up, she fell and struck her nose on the table and it began to bleed. The witness testified that she began crying and felt like a 'sissy.'

{¶7} "On cross-examination, the alleged victim, after some hedging, testified that she did have an infection in her foot that had occasionally caused her to fall. When confronted with a variety of photographs depicting the victim lying on the ground that were taken sometime in June and July, she did admit that she had fallen on various

2

occasions but could not remember the dates. Ultimately, the Court precluded the Defendant from continuing to question this witness concerning certain * * * photographs that were taken months ago in which she had fallen and prohibited the Defendant from introducing further photographs as they had no bearing in the case at bar. At that juncture, the Defendant discontinued questioning the witness and the Plaintiff did no redirect.

{¶8} "The Plaintiff next called Sergeant Daniel Peterson of the Warren Township Police Department to testify. This witness indicated that on September 25, 2015 at 12:44 AM, he was dispatched to 3341 Palmyra Road in Warren Township. He identified the Defendant as being at the premises when he arrived. Dispatch had informed [the] officer that the individual calling the department had indicated she was being assaulted by her son. When the officer first arrived on the scene, the Defendant was the first to speak with [him]. The Defendant indicated to the officer that he was upset because his mother had permitted our dogs to run around the premises unchained and, as a result, a cat had been killed. The officer then came into contact with the alleged victim. The officer testified that the victim had marks on her face and neck and that he saw blood on her. The officer testified that he saw the area of the house where the alleged incident had occurred and there was blood on the kitchen table, a burner from the stove on the floor or table, and a broken dish was present. The officer also indicated that the alleged victim did have an injury to her foot and had a plastic bag wrapped around it. Over objections, the officer was permitted to testify that the injuries he observed on the alleged victim were consistent with someone who had been punched or hit. He also indicated that the Defendant admitted to him that he had

3

hit the stove, but denied hitting his mother.

{¶9}    "On cross-examination, the officer readily admitted that he was not aware that the alleged victim had fallen on numerous occasions in the past and did not consider that as a source of her injuries.

{¶10}   "* * *

{¶11}   "The Defendant then testified on his own behalf.  The Defendant agreed that he had confronted his mother concerning the situation with dogs and a cat.  He also indicated that he had on numerous occasions in the past requested that his mother chain up her dogs.  He had knowledge that when he had slammed his fist on the stove a dish had broken.  However, he flatly denied hitting or assaulting his mother.  He testified that her injuries were likely the result of numerous falls she experienced due to a damaged foot.  He also indicated that on numerous occasions in the past, when she had fallen and he tried to help her up, she became very aggressive.  He also clarified that the pictures that he had attempted to employ to impeach his mother and attempted to introduce into evidence, accurately depicted various occasions where his mother had fallen and he had found her on the ground.  He always attempted to help her get up, despite the fact that she would sometimes be hostile in that regard."

{¶12} In claiming that his conviction is against the manifest weight of the evidence, appellant argues that the trial court erred in believing his mother as opposed to him.  While admitting that he was upset with his mother over the death of the cat, appellant asserts that the trial court should have believed his testimony that he did not strike his mother.

{¶13} As part of her trial testimony, appellant's mother stated that appellant hit

4

her on the head with a heavy hand as she was walking to the kitchen, causing her to fall to the floor. Although, on cross-examination, mother hesitated to admit that she had an infected foot which has caused her to fall in the past, she did not recant or alter her testimony that appellant struck her in the head.

{¶14} Appellant notes that his mother said that when she initially tried to get up, she again fell hitting her nose on a table, causing it to bleed. Appellant maintains that this testimony supports his assertion that her original fall was due her infected foot, not from physical contact with him. Although mother did not attribute her second fall to appellant, she likewise did not attribute it to her injured foot or any other cause. More importantly, that appellant's mother fell a second time does not lend any credibility to appellant's contention that the first fall was due solely to her injured foot. Furthermore, even if the evidence were that the second fall was caused by her injured foot, this still would not render her testimony that appellant's punch caused the first fall incredulous.

{¶15} Taken as a whole, mother's testimony did not have any inherent inconsistencies. Moreover, other evidence supports her version. Sergeant Peterson testified that appellant admitted to him that he was upset with his mother over the death of the cat when he confronted her. Appellant also admitted this at the trial. There is, likewise, no dispute that appellant broke a dish during the confrontation. Last, Sergeant Peterson testified that appellant's mother looked like she had just been hit or punched.

{¶16} Appellant also takes issue that his mother's testimony conflicts with that of Sergeant Peterson as to when the incident occurred. Sergeant Peterson testified that he was dispatched to mother's residence at 12:44 a.m., while she stated that the confrontation took place around 2:00 a.m. Given that the mother was hit in the head by

5

her son, fell to the floor, and then hit her nose on the kitchen table so hard that she bled, confusion as to the exact time of the incident is understandable. Furthermore, the exact time of the incident is not crucial.

{¶17} "To determine whether a verdict is against the manifest weight of the evidence, a reviewing court must consider the weight of the evidence, including the credibility of the witnesses and all reasonable inferences, to determine whether the trier of fact "'lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). 'This Court [is] not in a position to view witnesses who testified below and observe their demeanor, gestures and voice inflections, and use those observations in weighing the credibility of the proffered testimony.' *State v. Long*, 127 Ohio App.3d 328, 335, 713 N.E.2d 1 (4th Dist.1998) (citations omitted). Therefore, in weighing the evidence submitted at a criminal trial, an appellate court must give substantial deference to the factfinder's determinations of credibility. *State v. Tribble*, 2d Dist. Montgomery No. 24231, 2011-Ohio-3618, 2011 WL 2976890, ¶30, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus." *State v. Thompson*, 11th Dist. Trumbull No. 2015-T-0087, 2016-Ohio-7154, ¶7.

{¶18} Appellant has failed to establish that the trial court lost its way in believing mother's version over his. Moreover, if believed, mother's testimony satisfies all elements of domestic violence. A person is guilty of domestic violence if he knowingly causes, or attempts to cause, physical harm to a family or household member. R.C.

2919.25(A).

{¶19}   Appellant's conviction is not against the manifest weight of the evidence. As such, his sole assignment of error is without merit and the judgment of the Warren Municipal Court is affirmed.


DIANE V. GRENDELL, J.,

COLLEEN MARY O'TOOLE, J.,

concur.