[Cite as *Warren v. Chipps*, 2017-Ohio-7295.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| CITY OF WARREN, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2017-T-0002** |
| DANIEL CHIPPS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Warren Municipal Court, Case No. 2016 CRB 000957.

Judgment: Affirmed.

*Gregory V. Hicks*, Warren City Law Director, 391 Mahoning Avenue, N.W., Warren, OH 44483; and *H. Gilson Blair*, Assistant City Prosecutor, 141 South Street, S.E., Warren, OH 44481 (For Plaintiff-Appellee).

*Michael A. Partlow*, 112 South Water Street, Suite C, Kent, OH 44240 (For Defendant-Appellant).

TIMOTHY P. CANNON, J.

{¶1} Appellant, Daniel Chipps, appeals from the December 6, 2016 judgment of the Warren Municipal Court, convicting him on one count of misdemeanor assault following a bench trial. At issue is whether the conviction was against the manifest weight of the evidence. For the reasons that follow, the judgment of the trial court is affirmed.

{¶2} On May 9, 2016, appellant was charged in the municipal court, by way of a complaint, with one count of assault, a first-degree misdemeanor, in violation of Warren Codified Ordinance 537.03(a). The charge stems from an altercation that occurred between appellant and Thomas Trunick around 8:00 a.m. on May 8, 2016. The incident occurred at the residence of Tiffany Pirivatric, Mr. Trunick's step-granddaughter, in Warren, Ohio. Appellant was Tiffany's boyfriend and often stayed at her residence.

{¶3} The case was tried to the court on November 29, 2016. Appellee, the city of Warren, presented the testimony of Mr. Trunick. The defense presented the testimony of two witnesses: Tiffany and her neighbor, Ms. Trevonne Davis.

{¶4} The municipal court issued findings of fact and conclusions of law on December 6, 2016. Based on those findings and conclusions, the trial judge found appellant guilty of assault. Appellant was sentenced to serve 180 days in jail, with 170 days suspended, and fined $100.00. Appellant was also ordered to serve a five-year probationary period with conditions, including having no contact with Mr. Trunick.

{¶5} Appellant timely appealed his conviction and assigns one error for our review:

{¶6} "The appellant's conviction for assault is against the manifest weight of the evidence."

{¶7} To determine whether a verdict is against the manifest weight of the evidence, a reviewing court must consider the weight of the evidence, including the credibility of the witnesses and all reasonable inferences, to determine whether the trier of fact "'clearly lost its way and created such a manifest miscarriage of justice that the

2

conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶8} "This court [is] not in a position to view the witnesses who testified below and observe their demeanor, gestures and voice inflections, and use those observations in weighing the credibility of the proffered testimony." *State v. Long*, 127 Ohio App.3d 328, 335 (4th Dist.1998) (citations omitted). Therefore, in weighing the evidence submitted at a criminal trial, an appellate court must give substantial deference to the factfinder's determinations of credibility. *State v. Tribble*, 2d Dist. Montgomery No. 24231, 2011-Ohio-3618, ¶30, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.

{¶9} To convict appellant of assault, the city of Warren was required to prove, beyond a reasonable doubt, that appellant violated Warren Codified Ordinance 537.03(a) by knowingly causing or attempting to cause physical harm to Mr. Trunick.

{¶10} The evidence established Mr. Trunick arrived at Tiffany's home, unannounced and uninvited, around 8:00 a.m. on May 8, 2016. His intention was to speak to Tiffany regarding a $1700 loan she owed her grandmother, Mr. Trunick's wife. Mr. Trunick held the screen door open and knocked on the interior door. Although Mr. Trunick denied being angry or loud, the trial court found the other testimony more credible in that regard, which was that Mr. Trunick was yelling and pounding loudly on the door. The noise awoke appellant and Tiffany; it also awoke Ms. Davis and her infant son, next door. There was no testimony that Mr. Trunick ever threatened physical harm or property destruction.

3

{¶11} Initially, Tiffany and Mr. Trunick talked through the interior door, which had been partially opened from the inside; appellant stood silently behind Tiffany. Tiffany refused Mr. Trunick's request to come outside. Mr. Trunick denies pushing open the interior door. The trial court again found the other testimony more credible, which was that Mr. Trunick pushed the interior door open further after Tiffany asked him to leave. The trial court found, however, that Mr. Trunick never actually entered the residence.

{¶12} When the door was pushed open, appellant became angry and struck Mr. Trunick, knocking him to the ground. Appellant assaulted Mr. Trunick repeatedly, which resulted in Mr. Trunick's glasses being broken and scrapes on his knees and elbows.

{¶13} Appellant argues his conviction for assault was against the manifest weight because the testimony indicates he was entitled to use physical force to defend against a criminal trespass into Tiffany's home, where he was residing as a guest (i.e., the "castle doctrine" defense). The trial court made a factual finding that Mr. Trunick never entered the residence. Although the testimony relating to this fact was somewhat conflicting, both Mr. Trunick and Tiffany testified that he never entered the residence. Thus, giving deference to the trial court's determination of credibility, the "castle doctrine" simply does not apply. The defense advanced at trial and considered by the trial court was that appellant was entitled to use physical force in defense of Tiffany (i.e., the "defense of others" defense).

{¶14} "Defense of others is a variation of self-defense. An actor is legally justified in using force only when the person he is aiding would have been justified in using force to defend themselves." *State v. Kovacic*, 11th Dist. Lake No. 2010-L-065, 2012-Ohio-219, ¶16 (internal citations omitted). "If the person being defended had no

4

right to self-defense, the intervenor is not entitled to use force to defend that person, and cannot prevail on a 'defense of others' defense. The intervenor asserting such a defense has the burden of proving the affirmative defense of self-defense." *State v. Abalos*, 6th Dist. Lucas No. L-09-1280, 2011-Ohio-3489, ¶14, citing R.C. 2901.05(A) and *State v. Seliskar*, 35 Ohio St.2d 95, 96 (1973).

**{¶15}** Thus, in order to succeed with his "defense of others" defense, appellant was required to prove, by a preponderance of the evidence, that (1) Tiffany was not at fault in creating the situation giving rise to the affray; (2) Tiffany had a bona fide belief that she was in imminent danger of death or great bodily harm, and her only means of escape from such danger was the use of force; and (3) Tiffany did not violate any duty to retreat or avoid the danger. *See Kovacic*, *supra*, at ¶17, citing *State v. Robbins*, 58 Ohio St.2d 74 (1979), paragraph two of the syllabus.

**{¶16}** The municipal court found appellant had not established a "defense of others" defense, specifically failing on the second prong, and concluded: "this Defendant did NOT have reasonable grounds to believe, NOR did he have an HONEST belief even IF he were mistaken, that Tiffany was in imminent danger of bodily harm." [sic] Nothing in the record suggests otherwise. There was absolutely no testimony that Tiffany was ever in imminent danger of bodily harm, that Tiffany believed she was in imminent danger of bodily harm, or that appellant had reason to believe Tiffany was in imminent danger of bodily harm.

**{¶17}** Based on our review of the entire record and weighing the evidence and all reasonable inferences, it is our view that the trier of fact did not lose its way or create

such a manifest miscarriage of justice that appellant's conviction for misdemeanor assault must be reversed and a new trial ordered.

{¶18} Appellant's sole assignment of error is without merit.

{¶19} The judgment of the Warren Municipal Court is affirmed.


CYNTHIA WESTCOTT RICE, P.J.,

THOMAS R. WRIGHT, J.,

concur.