[Cite as *State v. Bryant*, 2020-Ohio-438.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2019-L-024** |
| MANSON M. BRYANT, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2018 CR 000732.

Judgment: Affirmed.

*Charles E. Coulson,* Lake County Prosecutor, and *Alexandra E. Kutz* and *Jennifer A. McGee,* Assistant Prosecutors, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Edward M. Heindel,* 2200 Terminal Tower, 50 Public Square, Cleveland, OH 44113 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1}   Appellant, Manson M. Bryant, appeals from the judgment of conviction, entered by the Lake County Court of Common Pleas after a jury trial on one count of aggravated burglary, one count of aggravated robbery, each with firearm specifications, one count of having weapons under disability, and one count of carrying concealed weapons. We affirm.

{¶2} In the early hours of July 6, 2018, appellant, with an accomplice, Jeffrey Bynes, broke into the trailer of Arturo Gonzalez ("the victim"), entering through an unlocked window. They proceeded to the victim's bedroom where he slept. The victim awoke and Mr. Bynes pointed a firearm to his head; the victim was instructed not to move as the men placed a blanket over his head and struck him. Appellant and Mr. Bynes left with cash, a laptop computer, a gold ring, and a cell phone. They then fled the scene in a silver BMW SUV owned by one, Kim Walter.

{¶3} In October 2018, the Lake County Grand Jury indicted appellant on seven counts: Count One, aggravated burglary, a felony of the first degree, in violation of R.C. 2911.11(A)(1); Count Two, aggravated burglary, a felony of the first degree, in violation of R.C. 2911.11(A)(2); Count Three, aggravated robbery, a felony of the first degree, in violation of R.C. 2911.01(A)(1); Count Four, kidnapping, a felony of the first degree, in violation of R.C. 2905.01(A)(2); Count Five, abduction, a felony of the third degree, in violation of R.C. 2905.02(A)(2); Count Six, having weapons while under disability, a felony of the third degree, in violation of R.C. 2923.13(A)(2); and Count Seven, carrying concealed weapons, a felony of the fourth degree, in violation of R.C. 2923.12(A)(2). Each count contained a forfeiture specification, pursuant to R.C. 2941.1417 and R.C. 2981.04; and Counts One through Five included either one-year or three-year firearm specifications, pursuant to R.C. 2941.141 and R.C. 2941.145.

{¶4} Appellant entered pleas of "not guilty" to all counts. The matter proceeded to a jury trial on Counts One through Five and a lesser included offense on Count Seven, carrying concealed weapons, a misdemeanor of the first degree, in violation of R.C. 2923.12(A)(2) ("Jury's Count Six"). Appellant waived his right to a jury trial on

2

Counts Six and Seven, which were tried to the bench. The jury found appellant guilty on Counts One through Five and the court found appellant guilty on Counts Six and Seven. For the purpose of sentencing, the trial court merged the two counts of aggravated burglary (Counts One and Two), the abduction and kidnapping charges (Counts Four and Five), the two counts of carrying a concealed weapon (Jury's Count Six and Count Seven). The court also merged the abduction and kidnapping charges (Counts Four and Five) with the aggravated robbery conviction (Count Three) as well as the one-year and three-year associated firearm specifications in Counts One and Three.

{¶5} At sentencing, the trial court initially ordered appellant to serve terms of imprisonment of eight years on Count One; eight years on Count Three; 36 months on Count Six; and 18 months on Count Seven. The trial court also ordered a mandatory three-year term for the firearm specification on Count One and three years for the firearm specification on Count Three. Counts One and Three, with their associated firearm specifications, were ordered to be served consecutively to on another. The sentences for Counts Six and Seven were ordered to run concurrently with Counts One and Three, for an aggregate term of 22 years.

{¶6} After imposing the above sentence, appellant verbally lashed out at the trial judge, using profanities and accusing the judge of racism. As a result, the court reconvened and increased the terms of imprisonment on Counts One and Three to the maximum, 11 years each. Appellant's aggregate prison term was accordingly increased to 28 years. Appellant now appeals. His first assignment of error provides:

{¶7} "The trial court erred when it imposed an additional six years on Bryant's sentence after his outburst in court."

3

{¶8} "Appellate courts "'may vacate or modify any sentence that is not clearly and convincingly contrary to law'" only when the appellate court clearly and convincingly finds that the record does not support the sentence." *State v. Miller*, 11th Dist. Lake No. 2018-L-133, 2019-Ohio-2290, ¶10, quoting *State v. Wilson,* 11th Dist. Lake No. 2017-L-028, 2017-Ohio-7127, ¶18.

{¶9} Appellant does not take issue with the trial court's imposition of the original 22-year term of imprisonment; and the record demonstrates the trial court considered the requisite statutory points and made the necessary findings for imposing consecutive sentences. With this in mind, appellant argues the trial court erred when it imposed an additional six years onto his original sentence. Appellant maintains the proper means of penalizing him for his tirade was via a direct contempt order. In effect, appellant argues the trial court's actions were contrary to law. We do not agree.

{¶10} After initially imposing the aggregate 22-year term, the following exchange occurred:

{¶11} [Appellant:] F*** your courtroom, you racist a** b***. F*** your courtroom, man. You racist as f***. You racist as f***. Twenty-two f***ing years. Racist a** b****. You ain't s***.

{¶12} [Trial court:] Remember when I said that you had some remorse?

{¶13} [Appellant:] You ain't s*** … You never gave me probation.

{¶14} [Trial court:] Wait a minute.

{¶15} [Appellant:] You never gave me a chance.

{¶16} [Trial court:] When I said that you had a certain amount of remorse, I was mistaken (Defendant continues yelling) The court determines - -

{¶17} [Appellant:] F*** you.

4

{¶18} [Trial court:] The court determines that maximum imprisonment is needed, so it's eleven years on Count 1 and eleven years on Count 3.

{¶19} [Appellant:] F*** that courtroom. You racist b****. You ain't s***. Let me out the courtroom, man. (More shouting and swearing.)

{¶20} In *State v. Thompson*, 11th Dist. Lake No. 2016-L-036, 2017-Ohio-1001, this court was faced with a similar scenario and upheld the trial court's actions. In *Thompson*, the trial court sentenced the defendant to an aggregate term of 18 months in prison for two felony-five convictions. After court was adjourned and as the defendant was exiting, the trial judge overheard the defendant make a vulgar, hostile comment to the prosecutor. The trial judge went back on record, proceeded to reconsider the defendant's level of remorse, and increased the term of imprisonment by three months on each count for a total of 24 months.

{¶21} On appeal, the defendant took issue with the trial court's actions, arguing his outburst was not due to a lack of remorse, but his bipolar disorder. The defendant urged this court to therefore reverse the sentence and direct the trial court to apply the law of contempt. In rejecting the defendant's position, this court stated:

{¶22} "A criminal sentence is final upon issuance of a final order." *State v. Carlisle*, 131 Ohio St.3d 127, 2011-Ohio-6553, ¶11. *See also State ex rel. White v. Junkin*, 80 Ohio St.3d 335, 337 (1997) (a trial court possessed authority to vacate a finding of guilt and imposition of sentence and order the defendant to face trial on a more serious charge because the judgment had never been journalized by the clerk pursuant to Crim.R. 32). A judgment of conviction is final when the order sets forth (1) the fact of the conviction; "(2) the sentence; (3) the signature of the judge; and (4) entry on the journal by the clerk of court." *State v. Baker*, 119 Ohio St.3d 197, 2008-Ohio-3330, syllabus, as modified by *State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, syllabus.

{¶23} The judgment on sentence was not final when the trial court went back on record and increased appellant's sentence. Accordingly,

5

the trial court possessed the authority to change its previous sentence and, after noting appellant's outburst reflected a lack of remorse, increase the penalty. *Thompson, supra,* at ¶13-14.

{¶24} As in *Thompson,* the trial court's initial order was not final upon the court's pronouncement; the court, therefore, possessed the authority to revisit the order and increase the same. It bears noting that appellant's sudden verbal eruption does not necessarily reflect a lack of remorse; after all, appellant could possess deep regret for the crimes he committed and the harm he caused and, at the same time, have a highly negative emotional reaction to the court's sentence. Still, the court could construe appellant's outburst as a sign that his previous statements of remorse and contrition were not genuine and were more a reflection of his desire to receive leniency. We accordingly hold that although the trial court could have held appellant in direct contempt for his paroxysm, the trial judge's action of increasing appellant's sentence by six years was not contrary to law.

{¶25} Appellant's first assignment of error lacks merit.

{¶26} Appellant's second assignment of error provides:

{¶27} "The convictions were against the manifest weight of the evidence and not supported by sufficient evidence."

{¶28} When a defendant moves the trial court pursuant to Crim.R. 29, he or she is challenging the sufficiency of the evidence. A "sufficiency" argument raises a question of law as to whether the prosecution offered some evidence concerning each element of the charged offense. *State v. Windle,* 11th Dist. Lake No. 2010-L-0033, 2011-Ohio-4171, ¶25. "[T]he proper inquiry is, after viewing the evidence most favorably to the prosecution, whether the jury could have found the essential elements of the crime

6

proven beyond a reasonable doubt." *State v. Troisi,* 179 Ohio App.3d 326, 2008-Ohio-6062, ¶9 (11th Dist.).

{¶29} In contrast, a court reviewing the manifest weight observes the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Schlee,* 11th Dist. Lake No. 93-L-082, 1994 WL 738452, *5 (Dec. 23, 1994).

{¶30} Appellant first argues the evidence did not adequately establish he participated in the criminal acts with Mr. Bynes. We do not agree.

{¶31} The victim testified that, on the morning of July 6, 2018, he was awoken by two black men wearing dark clothing. Both appellant and Mr. Bynes are African American males. The victim stated one of the men was brandishing a firearm and the firearm he observed was consistent with the weapon found in the room in which Mr. Bynes slept.

{¶32} Further, Ms. Medina testified that she visited the victim at approximately 4:30 a.m. on July 6, 2018 to obtain money. The victim obliged and she, as well as Mr. Bynes, returned to the condominium owned by one, Brian McCauley, where they were temporarily staying in a guest bedroom. Once there, Ms. Medina advised Mr. Bynes how to gain access to the victim's trailer, i.e., via a specific window; and Ms. Medina also told Mr. Bynes where the victim kept his money and laptop computer. She asserted she then witnessed appellant and Mr. Bynes don black clothing and observed Mr. Bynes place his firearm in his waist band. The men left and Ms. Medina observed

them leaving in a silver BMW SUV owned by Kim Walter. Shortly thereafter, Ms. Medina testified appellant and Mr. Bynes returned to the condo with the victim's wallet, cash, ring, and his laptop computer.

{¶33} Moreover, a surveillance camera from a business across the street from the victim's trailer park recorded a silver SUV arriving at the scene around 5:30 a.m. and leaving around 5:40 a.m. Ms. Walter, who stayed at Mr. McCauley's condo from time to time, testified she often allowed appellant and Ms. Medina to drive her vehicle. Ms. Walter testified she had stayed at the condo from July 5 to July 6, 2018. And she identified the silver SUV seen arriving and leaving the trailer park as her vehicle. Ms. Walter additionally testified Mr. Bynes owned a firearm, which she observed in his waistband on the morning of the incident; she further observed appellant and Mr. Bynes return to the condo and hastily run to the condo's second floor after the time of the robbery.

{¶34} In light of the foregoing, we conclude the state adduced sufficient, circumstantial evidence to establish appellant's identity as one of the individuals who broke into the victim's home beyond a reasonable doubt.

{¶35} Next, appellant argues he never had control or brandished the firearm at issue and, as such, there was no proof he had possessed the firearm. We disagree.

{¶36} Appellant was convicted of aggravated robbery, in violation of R.C. 2911.01(A)(1); aggravated burglary, in violation of R.C. 2911.11(A)(1); carrying concealed weapons, in violation of R.C. 2923.12(A)(2); and having weapons under disability, in violation of R.C. 2923.13(A)(2). The aggravated robbery statute, R.C. 2911.01(A)(1), provides: "No person, in attempting or committing a theft offense as

8

defined in Section 2913.01(K) of the Revised Code, * * * shall do any of the following: (A) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it or use it." Part of the definition of a "theft offense" under R.C. 2913.01(K)(4) includes complicity in committing any statutory theft offense. Moreover, R.C. 2911.11(A)(1) is included in the definition of a theft offense pursuant to R.C. 2913.01(K)(1) and, thus, similar to aggravated robbery, aggravated burglary is a statutorily defined "theft offense" that envelops complicity to commit the same. Both the carrying concealed weapons and having weapons under disability convictions presuppose the possession of a firearm or dangerous ordnance.

{¶37} R.C. 2923.03(F) provides: "Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, *or in terms of the principal offense.*" (Emphasis added.) As such, an unarmed accomplice may be convicted under R.C. 2911.01(A), R.C. 2911.11(A), R.C. 2923.12(A)(2), and R.C. 2923.13(A)(2), as well as with firearm specifications, and punished as if he were a principal. *State v. Chapman*, 21 Ohio St.3d 41, 42 (1986); *State v. Johnson*, 8th Dist. Cuyahoga No. 107427, 2019-Ohio-2913, ¶22. "In such a case, the actions of the principal are imputed to the accomplice, and the accomplice 'may be found to have committed every element of the offense committed by the principal, including possession of the weapon.'" *State v. Frost*, 164 Ohio App.3d 61, 2005-Ohio-5510, ¶20 (2d Dist.) quoting *State v. Letts*, 2d Dist. Montgomery App. No. 15681, 2001 WL 699537 (June 22, 2001).

{¶38} In this matter, although the jury could not conclude appellant himself actually possessed the firearm during the commission of the offenses, it could find him guilty, beyond a reasonable doubt as an aider and abetter. As there was sufficient, credible evidence that Mr. Bynes carried, brandished, and even struck the victim with a firearm during the commission of the crimes, there was likewise sufficient, credible evidence to find appellant guilty based upon his complicity.

{¶39} Finally, appellant asserts the convictions are against the manifest weight of the evidence because Ms. Medina's testimony was not credible; to wit, she was an admitted drug addict who received a direct benefit for her testimony. We do not agree.

{¶40} During cross-examination of Ms. Medina, defense counsel elicited testimony that she had pleaded guilty to a charge relating to her participation in the underlying incident. Ms. Medina also testified she had not been sentenced yet "because [the state] wanted [her] to testify." She asserted she did not want to go to prison, but was aware that she might. During a line of questions where defense counsel suggested she was a cooperating witness only because she sought leniency, Ms. Medina stated: "I'm not trying to get out of anything that I did. I have committed a crime, too. I never tried to get out of anything I did."

{¶41} Witness credibility rests solely with the fact finder, and an appellate court may not substitute its judgment for that of the jury. *State v. Awan*, 22 Ohio St.3d 120, 123 (1986). Hence, in weighing the evidence submitted at a criminal trial, an appellate court must give substantial deference to the jury's determinations of credibility. *State v. Tribble*, 2d Dist. Montgomery No. 24231, 2011-Ohio-3618, ¶30. "The jury is entitled to believe all, part, or none of the testimony of any witness." *State v. Archibald*, 11th Dist.

Lake Nos. 2006-L-047 and 2006-L-207, 2007-Ohio-4966, ¶61. "The trier of fact is in the best position to evaluate inconsistencies in the testimony by observing the witness's manner and demeanor on the witness stand - attributes impossible to glean through a printed record." *State v. Williams*, 11th Dist. Lake No. 2012-L-078, 2013-Ohio-2040, ¶21.

{¶42} The jury was aware of Ms. Medina's issues with drugs and was aware that she was instrumental in the burglary and robbery of the victim. Defense counsel established that she was providing testimony for the state pending her sentencing and, as a result, favorable testimony could result in a favorable sentencing recommendation from prosecutors. In light of these credibility issues, the jury still elected to believe Ms. Medina's testimony. We cannot say it lost its way.

{¶43} Appellant's second assignment of error lacks merit.

{¶44} Appellant's third assignment of error provides:

{¶45} "The trial court erred when it failed to merge the aggravated robbery with aggravated burglary."

{¶46} Appellant contends the trial court erred in failing to merge his convictions for aggravated burglary, aggravated robbery, and the associated firearm specifications because the offenses involved one victim and a continuous course of conduct. We do not agree.

{¶47} R.C. 2941.25 "incorporates the constitutional protections against double jeopardy. These protections generally forbid successive prosecutions and multiple punishments for the same offense." *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, ¶7. "Where the same conduct by defendant can be construed to constitute two or

more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." R.C. 2941.25(A). "[A] defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, at paragraph three of the syllabus.

{¶48} In the sentencing memorandum, while seeking merger of various counts of which appellant was found guilty, defense counsel did not move the court to merge the aggravated robbery and aggravated burglary counts. We shall therefore review the issue for plain error. In light of the evidence, we conclude the offenses at issue were committed separately and accordingly find no error.

{¶49} R.C. 2911.11(A)(1), defining aggravated burglary, provides:

{¶50} (A) No person, by force, stealth, or deception, shall trespass in an occupied structure * * *, when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if any of the following apply:

{¶51} (1) The offender inflicts, or attempts or threatens to inflict physical harm on another[.]

{¶52} Under the statute, the aggravated burglary in this case was complete when appellant and Mr. Bynes, who possessed a firearm, broke into the victim's residence, while he was present, with the intent to commit theft and attempted to cause the victim physical harm. Moreover, we set forth the elements of robbery under appellant's second assignment of error. That crime was complete when appellant and Bynes, while possessing and brandishing a firearm, stole the victim's money, ring, and

laptop. As the second query of the *Ruff* test is answered in the affirmative, the offenses were committed separately and appellant could be convicted of each.

{¶53} Appellant's third assignment of error lacks merit.

{¶54} For the reasons discussed in this opinion, the judgment of the Lake County Court of Common Pleas is affirmed.

MATT LYNCH, J.,

MARY JANE TRAPP, J.,

concur.