[Cite as *State v. Cox*, 2025-Ohio-3163.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 30356 |
| Appellee | : | |
| | : | Trial Court Case No. 2024 CR 02031 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| ISAIAH DEVION COX | : | Court) |
| | : | |
| Appellee | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on September 5, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

RONALD C. LEWIS, JUDGE

EPLEY, P.J., and TUCKER, J., concur.

**OPINION**
MONTGOMERY C.A. No. 30356

MICHAEL MILLS, Attorney for Appellant
MATHIAS H. HECK, JR., by TRISTAN D. DIEGEL, Attorney for Appellee

LEWIS, J.

{¶ 1} Defendant-Appellant Isaiah Devion Cox appeals from the judgment of the Montgomery County Common Pleas Court convicting him of two counts of felonious assault following a bench trial. For the following reasons, we affirm the judgment of the trial court.

I. **Facts and Course of Proceedings**

{¶ 2} On July 29, 2024, a Montgomery County grand jury indicted Cox for (1) aggravated robbery (deadly weapon), a first degree felony in violation of R.C. 2911.01(A)(1); (2) aggravated robbery (serious harm), a first degree felony in violation of R.C. 2911.01(A)(3); (3) felonious assault (serious physical harm), a second degree felony in violation of R.C. 2903.11(A)(1); (4) felonious assault (deadly weapon), a second degree felony in violation of R.C. 2903.11(A)(2); and (5) theft ($1,000 without consent), a fifth degree felony in violation of R.C. 2913.02(A)(1). Counts 1-4 of the indictment each included a three-year firearm specification. Cox pleaded not guilty to all charges.

{¶ 3} Cox filed a notice of self-defense and a waiver of his right to a jury trial. Following continuances granted at the request of Cox, a bench trial was held in November 2024.

{¶ 4} Dayton Police Officer Raymond Clemens testified first. At the time of the trial, Officer Clemens had been a police officer for one year and patrolled the west side of Dayton. He was dispatched to the crime scene on July 13, 2024, due to a report of a person being shot. Officer Clemens found the victim on the floor of a garage lying in a pool of blood

surrounded by a few people. He did not find a firearm at the scene. The State introduced footage from his body camera into evidence.

{¶ 5} Officer Corey Puderbaugh also testified for the State. He had been an officer with the Dayton Police Department for three years. On July 13, 2024, he was working with another police officer when they were dispatched to the crime scene based on a report of a person being shot. He spoke with one witness at the scene and a K-9 track was attempted but failed. The State introduced footage from his body camera into evidence.

{¶ 6} The victim testified next. He explained that he ran a window tinting business at his residence, the scene of the shooting. He had known Cox since 2018 and agreed to tint his windows for him at a reduced cost. Before the victim began tinting the windows, he had Cox accompany him as he drove to a gas station and then to AM/PM Market in his vehicle. The victim had about $3,000 in cash that he kept in the vehicle, which he stowed in the center console that day. They returned to the victim's residence, and the victim parked his car in the grass so that Cox could move his vehicle into the garage for the victim to proceed with the window tinting job.

{¶ 7} According to the victim, while he was tinting the windows, Cox asked to charge his phone in the victim's car. The victim agreed and unlocked his car remotely for Cox. The victim did not see Cox get into the car, but he heard the car's door shut. The victim went to his car and noticed that the glove compartment had been opened and that his money was missing from the center console. The victim then asked Cox "about [his] money as calmly as possible because I knew he had a gun." The victim had seen Cox's gun while he was tinting the windows of Cox's car. Cox denied taking the victim's money.

{¶ 8} The battery in Cox's car had died while the victim was tinting the windows. The victim explained that the batteries of cars often died when he tinted windows. The victim had

access to a jump box next door that he used to jump the dead batteries. The victim told Cox that he could not have his car back until he returned the money. Both Cox and the victim made phone calls. The victim then described what happened next: "I turn[ed] to him like, bro, just give me my money. And I got shot in the face." The victim was also shot twice in the back, but he could not remember how that had happened. The victim endured extensive injuries from the gunshot wounds. His mouth was wired shut for four months, he had surgery to replace his jaw, and a bullet was lodged in his spine.

{¶ 9} Relevant to Cox's self-defense claim, the victim admittedly owned two dogs. He had them contained in the house because they were vicious dogs. The victim had not felt that he had needed their protection because he knew Cox. The victim noted that Cox had been almost attacked by the dogs on a previous occasion. The victim testified that he had not threatened Cox with the dogs when Cox refused to return his money. The victim also explained that he did not own a gun at the time of the incident because he had a felony on his record.

{¶ 10} Detective Derek Wagers also testified for the State. He had been a detective with the Dayton Police Department for two years and had served eleven total years as a police officer. He recounted that three 9 mm bullet casings were found at the scene of the crime. No weapons were found, though. The dogs that were in the residence had no way to enter or exit the house on their own. Detective Wagers confirmed that State's Exhibit 35 was a true and accurate copy of the Ring video that was obtained from near the crime scene. He agreed that three gunshots were heard in the video.

{¶ 11} The trial court accepted the State's exhibits into evidence without objection. Cox moved for a Crim.R. 29 judgment of acquittal, which the trial court overruled.

{¶ 12} The defense called Cox's younger sister, Mya, as a witness. She lived with Cox and their mother. Mya knew the victim and considered him a bad person because he had done drugs with her other brother and had kicked him out of a car and left him in a remote area on a prior occasion. On the day of the shooting, Cox called Mya and asked her to bring him his car keys and a set of jumper cables to the victim's residence. According to Mya, Cox sounded afraid. Mya later received a video call from Cox, and she could see the victim's torso and hear him yelling and screaming at Cox. She subsequently received a call from Cox asking her to pick him up in the alley near the residence where the victim lived. When she picked Cox up, Mya saw "fear and distraughtness." She testified that she was unaware that Cox had shot the victim, and she never talked to the police.

{¶ 13} Cox testified last in his defense. He was 22 years old at the time he shot the victim. A couple of months before he shot the victim, he received approximately $36,000 in a legal settlement. He spent some of that money on two cars, things for his mother and sister, and an investment in a business. He decided to have the windows tinted in one of his cars and hired the victim to do the work.

{¶ 14} When Cox arrived at the victim's address, the victim asked him to ride along with him to the gas station. Cox paid the victim $120 for the window tinting, and the victim used some of this money to pay for gas. When they returned to the victim's residence, it took about two hours to tint four of the five windows. During this time, Cox placed his gun on a shelf in the garage, and he and the victim talked. Cox testified that he never charged his phone in the victim's car and the victim never confronted him about any missing money. After tinting four of the five windows, the victim said he had to go to the bathroom and entered the residence. According to Cox, the victim then returned to the garage about 30 seconds

later without a shirt on and sweating and his eyes were big. Cox said the victim seemed to be getting irritated.

{¶ 15} Cox retrieved his gun from the shelf in the garage and tried to start his car, but it would not start. Cox used his cellphone to call his sister and asked her to bring jumper cables. According to Cox, the victim threatened to cut him up and feed him to the dogs. Cox pulled out his gun because he did not know what the victim was going to do. As Cox was in his car, the victim approached quickly and lunged at him like he was going to pull him from his car. Cox shot the victim before he could grab him. He could not recall whether he shot the victim more than once. Cox did not see the victim with a gun that day, but when the victim quickly approached Cox, one of the victim's hands was in his pocket. Cox asserted that the victim had tried to sell him a gun a couple of months before the day he shot the victim.

{¶ 16} The pictures introduced at trial as the State's exhibits showed the layout of the property and the pool of blood in the garage. The Ring video showed Cox running down the alley away from the victim's garage shortly after three gunshots were heard. While he was running, Cox was speaking with someone on a cellphone. He appeared to be telling the person on the phone about what he did, the victim's dogs, and that he was located in the alley.

{¶ 17} On December 5, 2024, the trial court rendered not guilty verdicts on counts 1, 2, and 5 and the firearm specifications attached to counts 1 and 2. The court found Cox guilty on counts 3 and 4 (felonious assault) and the related firearm specifications. Following a sentencing hearing, the trial court sentenced Cox to an indefinite prison term of 2 to 3 years on count 3, with a mandatory 3-year prison term for the related firearm specification to be served prior and consecutively to the indefinite prison sentence. The trial court

sentenced Cox to 2 years on count 4 to be served concurrently with the sentence for count 3, with an additional mandatory 3-year term for the related firearm specification to be served prior and consecutively to the Cox's definite prison term. Cox's aggregate prison sentence was 8 to 9 years. He received 153 days of jail time credit. Cox filed a timely notice of appeal.

## II. Cox's Convictions Are Based on Legally Sufficient Evidence and Are Not Against the Manifest Weight of the Evidence

{¶ 18} Cox's assignment of error states:

THE STATE OF OHIO FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUPPORT THE CONVICTION FOR 2903.11(A1) [sic] /R.C. 2903.11(A)(2) AND THE APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHERE THE APPELLANT CLAIMED SELF DEFENSE.

{¶ 19} Cox raises arguments in his assignment of error relating to the sufficiency of the evidence and the manifest weight of the evidence. We address each argument in turn.

### A. Sufficiency of the Evidence

{¶ 20} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2009-Ohio-525, ¶ 10 (2d Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380 (1997). When reviewing the sufficiency of the evidence to support a criminal conviction, "'[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Id.* at ¶ 11, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded*

*by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, fn. 4 (1997). Therefore, the evidence and all rational inferences are evaluated in the light most favorable to the prosecution. *State v. Goff*, 82 Ohio St.3d 123, 138-139 (1998).

{¶ 21} Cox was convicted of felonious assault under R.C. 2903.11(A)(1) and (2). R.C. 2903.11(A) provides: "No person shall knowingly do either of the following: (1) Cause serious physical harm to another or to another's unborn; (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance." "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶ 22} Cox did not contest at trial and does not contest in this appeal whether the State met any of the essential elements of the felonious assault counts of which he was convicted. Rather, he argues that the State did not provide legally sufficient evidence to disprove Cox's claim of self-defense beyond a reasonable doubt.

{¶ 23} The State responds that the evidence at trial, including Cox's own testimony, established all of the essential elements of the felonious assault counts. According to the State, Cox's decision to raise a self-defense claim means that "he has testified to the elements of felonious assault." Appellee's Brief, p. 11. Further, the State contends that Cox's claim of self-defense is more appropriately reviewed on appeal under the manifest weight standard rather than the legal sufficiency standard.

{¶ 24} As Cox essentially conceded at trial and on appeal, the evidence at trial, including Cox's own testimony, established the essential elements of the felonious assault counts beyond a reasonable doubt. Therefore, Cox's convictions were supported by legally

sufficient evidence. We agree with the State that the proper standard under which to review Cox's claim of self-defense is the manifest weight standard.

### B. Manifest Weight of the Evidence

{¶ 25} "R.C. 2901.05(B)(1) places the initial burden of producing evidence 'that tends to support' a self-defense claim on the defendant." *State v. Bowen*, 2024-Ohio-1079, ¶ 11 (2d Dist.). "'[I]f the defendant's evidence and any reasonable inferences about that evidence would allow a rational trier of fact to find all the elements of a self-defense claim when viewed in the light most favorable to the defendant, then the defendant has satisfied the burden.'" *State v. Palmer*, 2024-Ohio-539, ¶ 20, quoting *State v. Messenger*, 2022-Ohio-4562, ¶ 25. "This burden of production is 'not a heavy one and . . . might even be satisfied through the state's own evidence.'" *Id.*, quoting *Messenger* at ¶ 22. For purposes of this appeal, we will presume that Cox carried this initial burden of production.

{¶ 26} Once the defendant puts forth sufficient evidence that he was acting in self-defense, the burden then shifts to the State to prove that the defendant did not act in self-defense. *Bowen* at ¶ 12, citing *Messenger* at ¶ 19. "To accomplish this, the State must disprove beyond a reasonable doubt at least one of the elements of self-defense." *Id.*, citing *State v. Gutierrez-Reynoso*, 2023-Ohio-3122, ¶ 72 (11th Dist.). The element that resolves this appeal is whether "the defendant had a bona fide belief that he . . . was in imminent danger of death or great bodily harm and that his . . . only means of escape from such danger was in the use of such force[.]" *See Messenger* at ¶ 14, quoting *State v. Barnes*, 94 Ohio St.3d 21, 24 (2002). We focus on this element in our manifest weight analysis.

{¶ 27} The State's burden "of disproving the defendant's self-defense claim beyond a reasonable doubt is subject to a manifest-weight review on appeal[.]" *Messenger* at ¶ 27. When conducting a manifest weight review, "[t]he court, reviewing the entire record, weighs

the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A conviction should not be reversed as being against the manifest weight of the evidence except "'in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin* at 175.

{¶ 28} "The second element–whether the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was the use of deadly force–'requires consideration of the force that was used in relation to the danger the accused believed he was in.'" *State v. Rothermel*, 2014-Ohio-3168, ¶ 14 (2d Dist.), quoting *State v. Bayes*, 2000 WL 1879101, *4 (2d Dist. Dec. 29, 2000). The bona fide belief element "is a combined subjective and objective test." *State v. Thomas*, 77 Ohio St.3d 323, 330 (1997). As we explained in *State v. Wheatley*, 2000 WL 145394 (2d Dist. Feb. 11, 2000):

The trier-of-fact first must consider the defendant's situation objectively, that is, whether, considering all of the defendant's particular characteristics, knowledge, or lack of knowledge, circumstances, history, and conditions at the time of the attack, [he] . . . *reasonably* believed . . . [he] was in imminent danger. Then, if the objective standard is met, the jury must determine if, subjectively, this particular defendant had an *honest* belief that she was in imminent danger. Thus, self defense is placed on the grounds of the *bona fides* of defendant's belief, and reasonableness therefor, and whether, under the circumstances, he exercised a careful and proper use of his own faculties.

(Cleaned up.) (Emphasis in original.) *Id.* at *3.

{¶ 29} Cox argues that the State failed to carry its burden to disprove any one element of self-defense beyond a reasonable doubt. Cox focuses on his own testimony that the victim had approached him while he was seated in a disabled vehicle, the victim had threatened to feed him to the dogs, the victim had lunged at him, and he had felt that he was going to lose his life so he had fired his gun at the victim.

{¶ 30} The State responds that Cox did not have a bona fide belief of imminent death or great bodily harm and used disproportionate force in repelling the victim's alleged assault. The State focuses on the evidence showing that the victim never had a weapon and never had physical contact with Cox. The State argues that Cox's version of events described, at most, "a shouting match Cox summarily ended by shooting [the victim] in the face." Appellee's Brief, p. 12.

{¶ 31} Based on our review of the record before us, we conclude that Cox's convictions were not against the manifest weight of the evidence. The evidence presented at trial established beyond a reasonable doubt that Cox did not have a bona fide belief of imminent death or great bodily harm at the time he shot the victim in the face. There was no evidence that the victim had any weapon when Cox shot him. There was no evidence that the victim had released his dogs to attack Cox or that he had made any movement toward his house to release the dogs when Cox shot him. Testimony indicated the dogs could not have left the house without assistance. The victim testified that he had not threatened to cut up Cox and feed him to the dogs. There was also no evidence that the victim had any physical contact with Cox before Cox shot him. Cox claimed that the victim had lunged at him while he sat in his car and that he believed the victim had wanted to pull him out of his car. But the victim testified that he had not lunged at Cox and that Cox was not even in the

car when Cox shot him. The absence of blood in Cox's car supported the victim's testimony. After the shooting, Cox fled the scene with his sister Mya. According to Cox and Mya, Cox never told Mya that he had shot the victim, let alone that he had done so in self-defense. Cox also did not call the police to report that he shot the victim in self-defense. These additional circumstances further weighed against Cox's self-defense claim.

{¶ 32} In finding Cox guilty of two counts of felonious assault, the trial court clearly credited the testimony of the State's witnesses over that of Cox and his sister. "The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 1997 WL 476684, *4 (2d Dist. Aug. 22, 1997). "The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence." *State v. Adams*, 2014-Ohio-3432, ¶ 24 (2d Dist.), citing *State v. Wilson*, 2009-Ohio-525, ¶ 14 (2d Dist.). "This court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict." *State v. Segovia*, 2024-Ohio-1392, ¶ 36 (2d Dist.), citing *State v. Bradley*, 1997 WL 691510, *4 (2d Dist. Oct. 24, 1997).

{¶ 33} Given the evidence presented at trial, we cannot conclude that the trial court lost its way when it rejected Cox's claim of self-defense. This is not the exceptional case in which the evidence weighed heavily against the convictions. Cox's convictions were not against the manifest weight of the evidence. The assignment of error is overruled.

## III. Conclusion

{¶ 34} Having overruled Cox's assignment of error, we affirm the judgment of the trial court.

. . . . . . . . . . . .

EPLEY, P.J., and TUCKER, J., concur.