[Cite as *State v. Melendez*, 2012-Ohio-2385.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 97175**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CRUZ MELENDEZ

DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-547961

**BEFORE:** Stewart, J., Blackmon, A.J., and Jones, J.

**RELEASED AND JOURNALIZED:** May 31, 2012

**ATTORNEY FOR APPELLANT**

Ruth R. Fischbein-Cohen
3552 Severn Road, Suite 613
Cleveland Heights, OH    44118


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:    Holly M. Welsh
Assistant County Prosecutor
The Justice Center
1200 Ontario Street, 9th Floor
Cleveland, OH    44113

MELODY J. STEWART, J.:

**{¶1}** Defendant-appellant Cruz Melendez appeals from her conviction for felonious assault with a deadly weapon stemming from a physical altercation with victim Jazmin Flores. Melendez complains that the trial court erred by not providing the jury with an instruction on the use of nondeadly force, that her motion for acquittal was denied without a hearing, and that there was insufficient evidence to convict her. For the following reasons, we affirm.

**{¶2}** Testimony offered by Melendez and the testimony offered by Flores concerning the events that transpired on the day of the incident conflict significantly. Flores testified that she was driving down West 25th Street and, as a courtesy, motioned a vehicle that was driven by Melendez to exit a plaza parking lot and to proceed ahead of her. Flores followed the vehicle and observed what she described as commotion taking place between Melendez and a child passenger in the back seat. Melendez testified that Flores struck the rear bumper of her vehicle while quickly changing lanes in an attempt to pass her.

**{¶3}** Melendez testified that she pulled into a parking lot and gestured for Flores to pull over while she inspected her car for damage, and when Flores continued on without stopping, Melendez reentered her vehicle and pursued Flores. Flores recounted becoming concerned for the safety of her child passengers when a visibly irate Melendez reappeared in her rear view mirror, so she pulled into a nearby auto repair shop parking

lot where she made deliveries as part of her employment, and honked her horn in order to summon help. Flores testified that Melendez, in turn, parked her car next to a fence just inside the entrance of the parking lot.

{¶4} Melendez stated that Flores exited her vehicle and approached Melendez's car. In response, Melendez and her cousin, Ketsia Rosado, got out of the car and walked toward Flores. Repair shop owner Sherman Moore testified that he walked out of the repair shop and into the parking lot just as the altercation began to escalate, and building owner Gary Grace testified that he arrived at the scene by car at the same time.

{¶5} Melendez stated that, after coming into close proximity with Flores, she recognized her as the woman who had been having a sexual relationship with her boyfriend, Pito. Flores questioned Melendez as to her identity, and when Melendez replied that her name is "Daisy," Flores realized that she was being confronted by Pito's girlfriend. An intense argument ensued and threats were exchanged.

{¶6} Flores and Melendez offered different versions of the ensuing scuffle; each alleging that the other struck first. Flores claims that she reacted to being attacked by swinging at Melendez and grabbing her hair only after seeing Melendez's hand move. Melendez contends that Flores attacked first, and then Moore intervened by restraining her to aid Flores. Nevertheless, what is uncontroverted is that Melendez struck Flores in the head with a glass bottle.

{¶7} Officer Amy Milner of the Cleveland Police Department was dispatched to the scene and arrived as Flores was receiving emergency medical attention. By this time,

Melendez had left the scene. Milner interviewed Flores, Moore, and Grace, and later questioned Melendez at the Second District police station. Melendez told Officer Milner that just prior to the fight, Flores approached her with what she believed to be brass knuckles and in response, she hit Flores in the face with a bottle that she happened to be holding.

{¶8} Melendez was indicted on two counts of felonious assault, and a jury convicted her of one count of felonious assault with a deadly weapon. Melendez assigns the following errors for our review: (1) the court erred in neglecting to instruct the jury relative to self-defense involving nondeadly force, (2) the court erred by denying her Crim.R. 29 motion absent a hearing or opportunity for the defense to support the motion, and (3) the jury erred in convicting her without sufficient evidence. We will address Melendez's assignments of error in reverse order for ease of discussion.

{¶9} In her third assignment of error, Melendez complains that the jury incorrectly found her guilty because there was insufficient evidence to support the verdict. We note that Melendez supports her sufficiency-of-the-evidence challenge by arguing her claim of self-defense. However, a defendant claiming self-defense does not seek to disprove an element of the offense charged, but instead seeks to relieve herself from culpability. Sufficiency is a test of adequacy and whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.

{¶10} Melendez does not specifically argue this assignment of error other than setting forth the applicable law regarding sufficiency of evidence. We can, therefore, summarily overrule this assignment of error. *See* App.R. 12(A)(2); App.R. 16(A). However, our review of the record finds that there is sufficient evidence to sustain Melendez's conviction.

{¶11} When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court examines the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶12} Melendez was convicted of felonious assault, the elements of which are stated in R.C. 2903.11, providing in pertinent part that:

(A) No person shall knowingly: * * * (1) [c]ause serious physical harm to

another * * * (2) [c]ause or attempt to cause physical harm to another * * *

by means of a deadly weapon or dangerous ordnance, as defined in section

2923.11 of the Revised Code.

"Knowingly" is defined in R.C. 2901.22(B),which states that: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain

result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

{¶13} While Flores testified that she did not see the glass bottle in Melendez's hand when she was hit in the face, the testimony of others establishes that Melendez knowingly approached and struck Flores with the bottle. Grace testified that he saw Melendez walk toward Flores with the container cupped in her hand to conceal it before striking Flores. Moore testified that Melendez advanced toward Flores with her hands down, and when Flores was struck, he saw glass flying. The testimony of Grace and Moore establishes that Melendez acted "knowingly."

{¶14} The element of "serious physical harm" as defined by R.C. 2901.01(A)(5), includes: "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement * * * (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering." Moore testified that after Flores was hit with the bottle, he saw "blood everywhere," and Grace also testified that "blood was running down her head." Officer Milner testified that Flores had suffered a cut over her right eye and received treatment from Cleveland Emergency Medical Services. Medical records from the emergency room that were admitted into evidence indicate that Flores was experiencing sharp and severe head pain, right shoulder pain, and had a one centimeter laceration over her right eye. We have repeatedly held that when a victim's injuries are serious enough to cause the victim to seek medical treatment, it may be reasonably inferred that the force exerted on the victim caused

serious physical harm. *State v. Wyland*, 8th Dist. No. 94463, 2011-Ohio-455, ¶ 32; *State v. Walker*, 8th Dist. No. 52391, 1987 WL 13027 (June 18, 1987).

{¶15} "Deadly weapon," as defined by R.C. 2923.11(A), means "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." Glass bottles and mugs have been found to constitute a deadly weapon. *See State v. Chappell*, 8th Dist. No. 79589, 2002-Ohio-676; *State v. Blaine*, 8th Dist. No. 85113, 2005-Ohio-3831; *State v. Chancey,* 8th Dist. Nos. No. 75633 and 76277, 2000 WL 193235 (Feb. 17, 2000).

{¶16} Uncontroverted eyewitness testimony established that Melendez used a glass bottle as a weapon to forcefully strike Flores on the head. The state also admitted into evidence an envelope containing shards of broken bottle glass along with photographs of the same lying on the parking lot pavement. The state's evidence demonstrates that all elements of the crime were present, and the evidence was sufficient to support Melendez's conviction. Accordingly, her third assignment of error is overruled.

{¶17} In her second assigned error, Melendez complains that the trial court erred when it denied her motion for acquittal without a hearing. She argues that her constitutional right to be heard was denied.

{¶18} The record indicates that at the end of the state's case, Melendez's counsel made an oral motion for acquittal without setting forth any grounds for the relief sought, and did not request a hearing on the motion. In *State v. Lutz,* 8th Dist. No. 80241, 2003-Ohio-275, the appellant complained that the trial court did not allow him to orally

argue his Crim.R. 29 motion. In that case, this court stated that "[a]lthough it may have been a preferable procedure for the court to permit defense counsel to argue his case on this motion, the rule does not state that the court is required to do so." *Lutz* at ¶ 139. This court also found that the "defendant was not prejudiced when his counsel was not permitted to argue in support of the Crim.R. 29 motion" because the evidence was "overwhelming in [the] case." *Id.* at ¶ 141.

{¶19} *Lutz* establishes that the trial court's ruling on a Crim.R. 29 motion does not require a hearing. And here, as in *Lutz*, the denial of Melendez's motion was warranted even without a hearing because the state presented overwhelming evidence sufficient to prove each element of the offense of felonious assault. Melendez's second assignment of error is overruled.

{¶20} For her first assignment of error, Melendez argues that the trial court erred when it did not instruct the jury relative to the defense of self-defense involving nondeadly force. While Melendez concedes that the trial court provided an instruction on self-defense involving the use of deadly force, she points out that the trial court did not make clear to the jury that there was no duty for her to retreat if she employed less than deadly force to protect herself.

{¶21} Because Melendez failed to request a jury instruction on nondeadly force at trial, she has waived all but plain error. This court may, pursuant to Crim.R. 52(B), notice plain errors or defects that affect a defendant's substantial rights. The alleged error must have substantially affected the outcome of the trial to rise to the level of plain

error.  *State v. Slagle*, 65 Ohio St.3d 597, 604-605, 605 N.E.2d 916 (1992); *State v. Carman*, 8th Dist. No. 90512, 2008-Ohio-4386, at ¶ 12.  However, we do not find plain error with regard to the jury instructions.

{¶22} The defendant bears the burden of proof for the affirmative defense of self-defense, and if self-defense is proven, it will relieve a defendant of criminal liability for the force utilized.  *State v. Kozlosky*, 195 Ohio App.3d 343, 2011-Ohio-4814, 959 N.E.2d 1097, ¶ 22 (8th Dist.).  A trial court must instruct a jury on the issue of self-defense involving nondeadly force if there is sufficient evidence on the applicability of the self-defense to the charged offenses.  *State v. Griffin*, 2d Dist. No. 20681, 2005-Ohio-3698, ¶ 16, citing *State v. Ervin,* 75 Ohio App.3d 275, 279, 599 N.E.2d 366 (8th Dist.1991).

{¶23} An instruction on the use of nondeadly force requires a defendant to demonstrate (1) that she is not at fault in instigating the situation that resulted in the altercation; and (2) that she had a reasonable and honest belief, even if mistaken, that she was in imminent danger of bodily harm, and using force not likely to cause death or great bodily harm was her sole means of protecting herself.  *Griffin* at ¶ 18, citing *State v. Hansen*, 4th Dist. No. 01CA15, 2002-Ohio-6135, ¶ 24.  Although a real or perceived threat of death or great bodily harm is necessary to justify the use of deadly force in self-defense, this type of dangerous threat is not required in order to use less than deadly force to repel an anticipated attack.  *Akron v. Dokes*, 31 Ohio App.3d 24, 25, 507 N.E.2d 1158 (9th Dist.1986), citing *State v. Robbins*, 58 Ohio St.2d 74, 388 N.E.2d 755 (1979).

Furthermore, there is no duty to retreat under any circumstances when nondeadly force is used in self-defense. *Hansen* at ¶ 24.

> To establish [a deadly force] self-defense, a defendant must prove the following elements: (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of [deadly] force; and (3) that the defendant did not violate any duty to retreat or avoid the danger.

*State v. Barnes*, 94 Ohio St.3d 21, 24, 759 N.E.2d 1240 (2002), citing *Robbins* at paragraph two of the syllabus.

{¶24} The trial court first instructed the jury on the use of nondeadly force, but did not state that there was no duty to retreat if nondeadly force was employed. However, because Melendez used a glass bottle, the trial court also gave a jury instruction on deadly force self-defense. The trial court informed the jury that the defense of self-defense was not available if the force used was unnecessary or greatly disproportionate to the apparent danger with which a defendant was confronted.

{¶25} Melendez argues that she did not initiate the altercation because Flores struck her car from the rear and continued driving after being signaled to stop. She further testified that she followed Flores to the auto repair shop only to discuss the car accident, and not to fight. Melendez claims that Flores instigated the fight in the parking lot by brandishing brass knuckles and threatening to kill her. Melendez alleges that when she was attacked, she had an honest belief of impending bodily injury because she believed that Flores was armed with brass knuckles. Therefore, she insists that her

fear was a natural reaction, and she had no other recourse but to defend herself. Photographs of Melendez show bruising over her eye and scratches on her face and neck, injuries that she attributed to Flores's assault.

{¶26} Members of the Cleveland Police Department testified that Melendez was not present at the scene when they arrived. Later during her questioning, Melendez claimed that Flores had brass knuckles. None were recovered from the scene.

{¶27} Melendez maintains that she had no duty or obligation to retreat before she could be legally justified in using force in self-defense. However, Melendez utilized a deadly weapon to defend herself, and a self-defense instruction on the use of deadly force and the duty to retreat is proper "when physical harm was inflicted by means of a deadly weapon or dangerous ordnance." *Columbus v. Dawson*, 33 Ohio App.3d 141, 514 N.E.2d 908 (10th Dist.1986), paragraph two of the syllabus; *State v. Sims*, 8th Dist. No. 85608, 2005-Ohio-5846, ¶ 16.

{¶28} Therefore, if Melendez believed that she was being assaulted with brass knuckles, then she was facing deadly force and had a duty to retreat because the threat of death or great bodily harm to her was potentially imminent. If Melendez's fear was only of bodily harm, she was allowed by law only to use an amount of force that was not likely to cause death or great bodily harm. Melendez's decision to strike Flores in the head with a bottle was deadly force and was disproportionate to the threat she faced under these circumstances. The trial court's instructions to the jury included the requirements for self-defense where a dangerous weapon was used to inflict deadly force as well as

instructions on the use of force not likely to cause death or great bodily harm. The jury instructions by the trial court were proper. Melendez had a duty to retreat before resorting to deadly force in defense. Her first assignment of error is accordingly overruled.

{¶29} Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____
MELODY J. STEWART, JUDGE

PATRICIA ANN BLACKMON, A.J., and
LARRY A. JONES, SR., J., CONCUR