[Cite as *State v. Rothermel*, 2014-Ohio-3168.]

## IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No.   26004 |
| | : | |
| v. | : | Trial Court Case No. |
| | : | 2013-CRB-6843 |
| BRYON J. ROTHERMEL | : | |
| | : | |
| Defendant-Appellant | : | (Criminal Appeal from |
| | : |  Municipal Court) |

. . . . . . . . . . .

### O P I N I O N

Rendered on the 18th day of July, 2014.

. . . . . . . . . . .

AMY B. MUSTO, Atty. Reg. No. 0071514, Assistant City Prosecutor, 335 West Third Street, Room 372, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellee

MARSHALL G. LACHMAN, Atty. Reg. No. 0076791, 75 North Pioneer Boulevard, Springboro, Ohio 45066
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** Defendant-appellant, Bryon J. Rothermel, appeals from his conviction in the Dayton Municipal Court for one count of assault following a bench trial. For the reasons outlined below, the judgment of the trial court will be affirmed.

## Facts and Course of Proceedings

**{¶ 2}** On July 19, 2013, Rothermel was arrested and charged with assault in violation of R.C. 2903.13(A), a misdemeanor of the first degree; menacing in violation of R.C. 2903.22, a misdemeanor of the fourth degree; and criminal damaging in violation of R.C. 2909.06(A)(1), a misdemeanor of the second degree. The charges arose from an argument and physical altercation between Rothermel and his friend/coworker, Johnathan Crago. Rothermel pled not guilty to the charges and the matter proceeded to a bench trial. The following facts were elicited at trial.

**{¶ 3}** On the evening of July 19, 2013, Crago went to Rothermel's residence at 1047 Patterson Road Dayton, Ohio, unannounced. Rothermel testified that he was inside his residence when Crago unlocked the gate on his property, entered his backyard, and proceeded to scream death threats at him. Rothermel claimed that he was "terrified" and thought Crago was going to shoot him. Trans. (Oct. 7, 2013), p. 49. In response, Rothermel testified that he grabbed his gun and exited his house from the front door. He claimed that Crago approached him on his front porch waving his arms and screaming that he was going to kill him.

**{¶ 4}** While Rothermel testified that Crago attacked him, he later admitted that Crago never actually hit him and that he never saw Crago carrying a gun. Despite this, Rothermel

testified that he began punching Crago to the point where Crago "went down the steps" and fell over his motorcycle parked on Rothermel's driveway. *Id*. at 50. He also testified that the first time he hit Crago, he "hit him with the barrel of [his] pistol." *Id*. at 35. According to Rothermel, Crago would still not leave, so he "hit him a few more times" and "raised [his gun] up" whenever Crago approached him. *Id*. at 50, 54. Rothermel claimed that Crago eventually began pushing his motorcycle down the driveway to leave; however, by that time, his neighbor had called the police. Not wanting Crago to leave before the police arrived, Rothermel testified that he pushed Crago off his motorcycle "to keep him there." *Id*. at 55.

{¶ 5} Rothermel's next-door neighbor, Richard Riblet, testified that he saw Rothermel and Crago arguing from his window. According to Riblet, Rothermel and Crago were standing 20 feet apart on Rothermel's driveway when Riblet first observed them. Riblet saw Rothermel point his gun at Crago and heard Rothermel tell Crago that he was going to kill him if he did not leave. Riblet testified that "[Crago] was trying to leave and he had gotten to the end of the driveway and then [Rothermel] ran back down there and shoved him off the motorcycle[.]" *Id*. at 11. He also saw Rothermel strike Crago down the side of his head and face with his gun while Crago was "off of the curb standing right on the street[.]" *Id*. at 10. Riblet testified that he thought Rothermel was going to shoot Crago, so he called the police. After calling the police, Riblet testified that he shouted at Rothermel informing him that the police were on their way. According to Riblet, the police arrived just seconds after Rothermel struck Crago with his gun.

{¶ 6} Officer Joseph Sheen of the Dayton Police Department was the first officer to arrive at the scene. Sheen testified that when he first arrived at Rothermel's residence, he saw two gentlemen standing in the driveway and a damaged motorcycle lying between the driveway's

apron and the street. Officer Robert Orndorff of the Dayton Police Department was the second officer to arrive at the scene, and Orndorff testified that when he first made contact with Crago, he observed Crago crying and fresh blood coming from his ear.

{¶ 7}  After both parties rested at trial, the trial court made a ruling from the bench finding Rothermel not guilty of menacing and criminal damaging, but guilty of assault. The court also indicated that self-defense did not apply, because Rothermel used physical force against Crago without such force being used against him. Thereafter, the trial court imposed a 180-day jail sentence, which was suspended; one year of community control sanctions; a $500 fine, $400 of which was suspended; and 40 hours of community service. The trial court also ordered Rothermel's weapon to be destroyed.

{¶ 8}  Rothermel now appeals from his assault conviction, raising one assignment of error for review.

**Assignment of Error**

{¶ 9}  Rothermel's sole assignment of error is as follows:

THE TRIAL COURT'S VERDICT SHOULD BE REVERSED AS IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 10}  Under his sole assignment of error, Rothermel contends that the trial court erred in convicting him of assault, because the manifest weight of the evidence establishes that he acted in self-defense when striking Crago.

{¶ 11}  We note that "[w]hen a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and

all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "A judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id*., quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 12} When self-defense is raised as an affirmative defense, as it is here, different standards apply depending on whether the defendant responded with deadly or non-deadly force. *State v. New*, 10th Dist. Franklin No. 92AP-904, 1994 WL 521253, *2 (Sept. 20, 1994). "Deadly force" is defined as "any force that carries a substantial risk that it will proximately result in the death of any person." R.C. 2901.01(A)(2).

{¶ 13} "In order to establish self-defense through the use of deadly force, 'a defendant must prove the following elements: (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger.' " *State v. Tribble*, 2d Dist. Montgomery No. 24231, 2011-Ohio-3618, ¶ 36, quoting *State v. Barnes*, 94 Ohio St.3d 21, 24, 759 N.E.2d 1240 (2002). (Other citation omitted.) " 'If the defendant fails to prove *any one* of these elements by a preponderance of the evidence he has failed to demonstrate that he acted in self-defense.' " (Emphasis sic.) *Id*., quoting *State v.*

*Jackson*, 22 Ohio St.3d 281, 284, 490 N.E.2d 893 (1986).

{¶ 14} The second element–whether the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was the use of deadly force–"requires consideration of the force that was used in relation to the danger the accused believed he was in." *State v. Bayes*, 2d Dist. Clark No. 00CA0032, 2000 WL 1879101, *4 (Dec. 29, 2000). This is a subjective test concerning whether the degree of force was reasonable as to the accused. *Id*., citing *State v. Koss*, 49 Ohio St.3d 213, 215, 551 N.E.2d 970 (1990). (Other citation omitted.) "Nevertheless, whether the circumstances which created that reasonable belief actually existed must be determined objectively." *Id*.

{¶ 15} It is also well established that a defendant may only use " 'that force which is reasonably necessary to repel the attack.' " *State v. Paschal*, 2d Dist. Montgomery No. 18262, 2001 WL 395354, *2 (Apr. 20, 2001), quoting *State v. Williford*, 49 Ohio St.3d 247, 249, 551 N.E.2d 1279 (1990). "[M]ere words do not justify the use of deadly force, and 'vile or abusive language or verbal threats, no matter how provocative, do not justify an assault or the use of a deadly weapon.' " *State v. Seals*, 2d Dist. Clark No. 2009 CA 4, 2010-Ohio-2843, ¶ 45, quoting *State v. Napier*, 105 Ohio App.3d 713, 723, 664 N.E.2d 1330 (1st Dist.1995). "If the defendant used more force than reasonably necessary and if the force used is greatly disproportionate to the apparent danger, then the defense of [self-defense] is not available." *Ohio Jury Instructions*, CR Section 421.23 (Rev. Aug. 16, 2006). " '[W]hether the force used was excessive or not is a question for the trier of facts.' " *Bayes* at *4, quoting *State v. McLeod*, 82 Ohio App. 155, 157, 80 N.E.2d 699 (9th Dist.1948).

{¶ 16} In this case, Rothermel's actions qualify as deadly force given that he delivered

multiple punches and struck Crago on the head with the barrel of his gun. *See, e.g., New*, 10th Dist. Franklin No. 92AP-904, 1994 WL 521253 at *3 (striking someone on the side of the head with a club qualifies as deadly force); *State v. Sutfin*, 10th Dist. Franklin No. 91AP-305, 1991 WL 224536, *2 (Aug. 29, 1991) (hitting someone in the head with a pool cue creates a substantial risk of causing death and qualifies as deadly force); *State v. Wagner*, 11th Dist. Lake No. 99-L-043, 2000 WL 973421, *3 (July 14, 2000) (striking someone in the head with a broken wineglass qualifies as deadly force); *State v. Melendez*, 8th Dist. Cuyahoga No. 97175, 2012-Ohio-2385, ¶ 28 (striking someone in the head with a bottle qualifies as deadly force).

{¶ 17} The weight of the evidence, however, does not establish that Rothermel had a bona fide belief that he was in danger of death or great bodily harm and that the only means of escape was asserting such deadly force. While Rothermel testified that he was "terrified" by Crago's threats and that he thought that Crago was going to shoot him, the surrounding circumstances do not warrant such a belief, as Rothermel testified that he never saw Crago carrying a gun and that Crago never hit him. Even assuming that Rothermel was initially threatened by Crago's presence, any threat of imminent danger dissipated after Crago attempted to leave.

{¶ 18} In addition, Rothermel responded to Crago's threats by immediately exiting his home and confronting Crago, rather than staying inside and calling the police. In fact, at one point Rothermel even tried to prevent Crago from leaving his property. These actions tend to indicate that Rothermel was not as terrified by Crago's presence as he claimed. Furthermore, the testimony of Rothermel's next-door neighbor, Richard Riblet, describes Rothermel as the sole physical aggressor.

{¶ 19} The record also demonstrates that the force used by Rothermel was disproportionate to the danger posed by Crago, as Rothermel responded to Crago's mere threats by punching him repeatedly, shoving him off his motorcycle, and hitting him over the head with his firearm while he was already off of Rothermel's property. Rothermel opted to use physical force against Crago despite Crago never hitting him, never brandishing a gun, and eventually trying to leave. Therefore, the weight of the evidence clearly demonstrates that Rothermel's force was excessive and unnecessary.

{¶ 20} Because the record indicates that Rothermel did not have a bona fide belief that he was in danger of death or great bodily injury that required the use of deadly force, and because the record clearly establishes that Rothermel used more force than reasonably necessary, the trial court's decision finding that he was not acting in self-defense and guilty of assault was not against the manifest weight of the evidence.

{¶ 21} Rothermel's sole assignment of error is overruled.

## Conclusion

{¶ 22} Having overruled Rothermel's sole assignment of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

FROELICH, P.J. and FAIN, J., concur.

Copies mailed to:

Amy B. Musto
Marshall G. Lachman
Hon. Deirdre E. Logan