[Cite as *State v. Laidlaw*, 2026-Ohio-168.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

v.

CADEN JOSEPH LAIDLAW,

    DEFENDANT-APPELLANT.

CASE NO. 14-25-28

OPINION AND
JUDGMENT ENTRY

Appeal from Union County Common Pleas Court
Trial Court No. 2024-CR-0201

Judgment Affirmed

Date of Decision: January 20, 2026

APPEARANCES:

    *Jonathan T. Tyack* for Appellant

    *Raymond Kelly Hamilton* for Appellee

**ZIMMERMAN, P.J.**

{¶1} Defendant-appellant, Caden Joseph Laidlaw ("Laidlaw"), appeals the June 6 and 11, 2025 judgment entries of sentence of the Union County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case stems from a physical altercation that occurred on the evening of September 13, 2024 at the Slushed Up bar in Marysville, Ohio. Following a verbal exchange between Laidlaw and the victim, C.D., the interaction escalated into a physical fight during which Laidlaw struck C.D. multiple times. As a result of the altercation, C.D. suffered physical injuries that required medical attention.

{¶3} On September 27, 2024, the Union County Grand Jury indicted Laidlaw on a single count of felonious assault in violation of R.C. 2903.11(A)(1), (D)(1)(a), a second-degree felony. Laidlaw appeared for arraignment on October 23, 2024 and pleaded not guilty to the indictment. He subsequently filed a notice of self-defense on November 14, 2024.

{¶4} The case proceeded to a jury trial on April 15 and 16, 2025. At trial, as relevant to the facts of this appeal, the State presented the testimony of C.D. and the sole bartender, Cassidy Francisco ("Francisco"), while Laidlaw testified in his own defense.

{¶5} C.D. testified that the verbal exchange began when he made a joke about religion after hearing Laidlaw say "Jesus Christ," which led to more

-2-

comments between the men about religion. (Apr. 15, 2025 Tr., Vol. I, at 37). According to C.D., he then stood up from his bar stool and pushed it in because he sensed Laidlaw "was aggravated." (*Id.*). C.D. conceded that getting off the stool could have been "construed" as an offensive move, but he intended it to give himself "a way out." (*Id.* at 40). According to C.D., Laidlaw then grabbed his vest, punched him in the face, drove him into a brick wall, pushed him against the bar, and eventually took him to the floor. C.D. recalled Laidlaw's hand "around [his] throat as he was hitting [him] in the face while [his] head was on the floor." (*Id.* at 39). C.D. testified that he did not strike Laidlaw.

{¶6} C.D. further testified that he is 5'6" tall and that he weighed 285 pounds at the time of the altercation, but that Laidlaw is six to eight inches taller than him. C.D. testified that he had a gun and five knives on his person during the altercation. However, he testified that the gun was in his vest at the time of the altercation and that the knives were "pocket knives" but "[t]he only thing you [could] see on the outside [was] the clip holding them on [his] pocket." (*Id.* at 76). State's Exhibit 1, a video recording of the altercation, was played for the jury. It depicts the portion of the altercation during which Laidlaw drove C.D. to the wall and floor while punching him.

{¶7} Francisco corroborated that she observed that both men "had opposing views" and that they turned toward one another. (*Id.* at 36). She testified that, after briefly looking away, she turned back to see that Laidlaw had pinned C.D. "against

the bar." (*Id.* at 37). According to Francisco, "it was kind of shoving up until" "they got to the wall" and "Laidlaw had just been throwing punches at that point." (*Id.* at 37). She further testified, "And then Laidlaw had taken him to the floor and was just punching very hard. And, [C.D.] could not necessarily . . . defend himself at that point." (*Id.* at 38).

{¶8} Laidlaw testified in his defense as to his version of the altercation. Specifically, he testified that he told C.D. to "stay blessed" after C.D. "murmured something," to which C.D. replied, "fuck God." (Apr. 16, 2025 Tr., Vol. II, at 82). Laidlaw testified that, after he retorted, "man, you sound dumb as hell," C.D. said, "man, I'll fucking kill you," stood up, and began "closing the distance on [him]." (*Id.* at 84). Laidlaw further testified that he observed C.D. was part of "the Outlaws, the motorcycle gang" and was "one hundred percent sure [he saw] a knife hanging off his belt in a sheath." (*Id.*). Moreover, Laidlaw claimed that he put his hands up to push C.D. away after C.D. "put hands on [him]" and he felt threatened because C.D. was between him and the only door. (*Id.* at 85). Laidlaw admitted that it was a "one-on-one fight" and "mutual combat" and that he stopped hitting C.D. only when C.D. "had finally stopped fighting back." (*Id.* at 86). Laidlaw testified that he "didn't want to fight him" because "[h]e's a big dude [and there was] no part of [him] that wanted to get into a physical altercation with him that night" since C.D. had 80 pounds on him. (*Id.*).

{¶9} On April 16, 2025, the jury found Laidlaw guilty of the count alleged in the indictment. On June 6, 2025, the trial court sentenced Laidlaw to a minimum term of three years in prison to a maximum term of four and one-half years in prison.[1]

{¶10} Laidlaw filed his notice of appeal on June 27, 2025. He raises four assignments of error for our review. We will begin by addressing Laidlaw's third assignment of error, followed by his first and second assignments of error together, then his fourth assignment of error.

**Third Assignment of Error**

**Defendant's conviction of felonious assault is against the manifest weight of the evidence. (R. 94, 87, 83; Trial Tr. V.1 and V.2 *passim*)**

{¶11} In his third assignment of error, Laidlaw argues that his felonious assault conviction is against the manifest weight of the evidence. In particular, Laidlaw contends that the jury lost its way by rejecting his claim of self-defense.

*Standard of Review*

{¶12} Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[] the evidence

---

[1] The trial court filed a nunc pro tunc judgment entry of sentence on June 11, 2025.

and all reasonable inferences, consider[] the credibility of witnesses and determine[] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119.

*Analysis*

{¶13} Laidlaw was convicted of felonious assault in violation of R.C. 2903.11, which provides, in its relevant part, that "[n]o person shall knowingly . . . [c]ause serious physical harm to another . . . ." R.C. 2903.11(A)(1). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶14} "'Serious physical harm to persons' means," as relevant to this case, "[a]ny physical harm that carries a substantial risk of death;" "[a]ny physical harm

-6-

that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;" "[a]ny physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;" or "[a]ny physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5)(b)-(e).

{¶15} However, on appeal, Laidlaw does not dispute that the evidence presented at trial establishes the elements of felonious assault. Rather, he contends that the jury lost its way by rejecting his claim of self-defense. That is, he argues that his felonious assault conviction is against the manifest weight of the evidence because the weight of the evidence presented at trial reflects that the State failed to satisfy its burden of disproving at least one of the elements of self-defense beyond a reasonable doubt.

{¶16} Under Ohio's current self-defense statute, "a defendant claiming self-defense has the burden of production—that is, the burden of producing evidence that 'tends to support' his use of force in defending himself." *State v. Estelle*, 2021-Ohio-2636, ¶ 18 (3d Dist.). Thus, "if evidence is presented 'that tends to support' that the defendant used the force in self-defense, the *prosecution* must prove beyond a reasonable doubt that the accused did not act in self-defense." (Emphasis in original.) *State v. Flory*, 2020-Ohio-5136, ¶ 43 (3d Dist.). "Accordingly, 'the burden of *proof* for . . . self-defense has shifted to the state,' but 'the burden of

*production* for . . . self-defense[ ] remains with the defendant.'" (Emphasis in original.) *State v. Green*, 2023-Ohio-4360, ¶ 104 (3d Dist.), quoting *State v. Messenger*, 2022-Ohio-4562, ¶ 44.

{¶17} "Self-defense is an affirmative defense that, if proved, relieves a defendant of criminal liability for the force that the defendant used." *State v. Ballein*, 2022-Ohio-2331, ¶ 43 (12th Dist.). "The elements of self-defense differ depending on whether the defendant used deadly or non-deadly force to defend himself." *State v. Bagley*, 2014-Ohio-1787, ¶ 15 (3d Dist.).

> Where a defendant asserts a self-defense claim involving the use of nondeadly force, a he must provide sufficient evidence that "'(1) he was not at fault in creating the situation giving rise to the affray; (2) he had reasonable grounds to believe or an honest belief that he or she was in imminent danger of bodily harm, and (3) he did not use more force than was reasonably necessary to defend against the imminent danger of bodily harm.'"

*State v. Weemes*, 2025-Ohio-2319, ¶ 31 (6th Dist.), quoting *State v. Greer*, 2023-Ohio-103, ¶ 33 (6th Dist.), quoting *State v. Paskins*, 2022-Ohio-4024, ¶ 48 (5th Dist.). Generally, "a person is privileged only to 'use as much force as is reasonably necessary to repel [an] attack.'" *State v. Crowe*, 2019-Ohio-3986, ¶ 16 (3d Dist.), quoting *State v. Shine-Johnson*, 2018-Ohio-3347, ¶ 61 (10th Dist.). "In determining whether the defendant presented evidence tending to support a self-defense claim, the trial court considers all of the evidence, from all sources, construed most strongly in the defendant's favor." *Weemes* at ¶ 31. "'The elements of self-defense are cumulative, and a defendant's claim of self-defense fails if any one of the

-8-

elements is not present.'" *State v. Passmore*, 2023-Ohio-3209, ¶ 29 (3d Dist.), quoting *State v. Ridley*, 2022-Ohio-2561, ¶ 15 (1st Dist.).

**{¶18}** Once a defendant presents a viable self-defense claim, the State bears the burden to prove, beyond a reasonable doubt, both the elements of assault in violation of R.C. 2903.13(A) and that the defendant did not act in self-defense. *Weemes* at ¶ 32. Thus, to defeat a self-defense claim, "the State must 'disprove at least one of the elements of self-defense beyond a reasonable doubt.'" *Passmore* at ¶ 29, quoting *State v. Carney*, 2020-Ohio-2691, ¶ 31 (10th Dist.).

**{¶19}** On appeal, Laidlaw contends that the weight of the evidence supports his claim of self-defense. Specifically, he challenges the weight of the evidence presented at trial supporting the State's burden of disproving beyond a reasonable doubt that he was not at fault for creating the situation and that he possessed a bona fide belief that he was in danger. In support of this argument, Laidlaw points to the testimony of C.D., who admitted that he stood up from his bar stool during their verbal exchange, an action Laidlaw argues could be construed as an "offensive move." (Appellant's Brief at 17). Laidlaw further contends that his belief of imminent danger was objectively reasonable because C.D. threatened to kill him and Laidlaw observed a knife on C.D.'s person. Consequently, Laidlaw argues that his version of events—that he was reacting to aggression—is more credible than the State's theory of the case.

{¶20} "Although we review credibility when considering the manifest weight of the evidence, the credibility of witnesses is primarily a determination for the trier of fact." *State v. Banks*, 2011-Ohio-5671, ¶ 13 (8th Dist.). In this case, the jury was presented with conflicting accounts of the altercation, including testimony from Laidlaw, C.D., and Francisco, as well as video evidence of the incident. Notwithstanding Laidlaw's contention that C.D.'s movements justified a preemptive strike, "we are mindful of the jury's 'superior first-hand perspective in judging the demeanor and credibility of witnesses.'" *State v. Suffel*, 2015-Ohio-222, ¶ 33 (3d Dist.), quoting *State v. Phillips*, 2014-Ohio-5162, ¶ 125 (10th Dist.). Consequently, the trier of fact was free to believe C.D.'s testimony that Laidlaw initiated the physical violence or to disbelieve Laidlaw's testimony that he was reacting to a perceived threat.

{¶21} Even so, notwithstanding Laidlaw's contention that the weight of the evidence suggests he acted in self-defense, the balance of the evidence presented weighs against his claim. Specifically, the weight of the evidence reflects that the State successfully disproved Laidlaw's claim of self-defense by demonstrating not only that he was at fault in creating the situation, but also that he used more force than was reasonably necessary to defend against the imminent danger of bodily harm.

{¶22} Critically, because the elements of self-defense are cumulative, the State was required to disprove at least one of the cumulative elements of the

defense—most notably in this case, that Laidlaw was at fault for creating the violent situation or that he used force in excess of what was reasonably necessary. Regarding the element of fault, "Ohio courts have long recognized that a person cannot provoke [an] assault or voluntarily enter an encounter and then claim a right of self-defense." *State v. Woodson*, 2022-Ohio-2528, ¶ 82 (6th Dist.). In this case, while Laidlaw argues he was defending himself, his own trial testimony undermines this element. Indeed, Laidlaw admitted that it was a "one-on-one fight" and "mutual combat." (Apr. 16, 2025 Tr., Vol. II, at 86). He further confirmed on cross-examination that he engaged in mutual combat because C.D. was "actively fighting" him. (*Id.* at 91).

{¶23} Importantly, by testifying that he engaged in "mutual combat," Laidlaw provided the very evidence that defeats his claim, as it demonstrates that he voluntarily entered the encounter. *Compare State v. Daley*, 2020-Ohio-4390, ¶ 48 (10th Dist.). ("Even if [the witness's] testimony were viewed in appellant's favor, his testimony merely shows appellant and the victim may have engaged in mutual combat, which does not support any claim of self-defense as one claiming self-defense must not be at fault for creating the situation giving rise to the affray."), citing *State v. Milling*, 2009-Ohio-3002, ¶ 13 (9th Dist.) (defining "mutual combat" as "'[a] consensual fight on equal terms—arising from a moment of passion but not in self-defense—between two persons armed with deadly weapons'"), quoting *Black's Law Dictionary* (8th Ed. 2004). Thus, by characterizing the altercation as

"mutual combat," Laidlaw effectively conceded that he was not free from fault and that he voluntarily entered the encounter. *See State v. Smith*, 2024-Ohio-2811, ¶ 12 (8th Dist.) (recognizing that mutual combat "generally does not support a claim of self-defense").

{¶24} Moreover, beyond Laidlaw's admission of fault, the weight of the evidence further supports the conclusion that he used more force than was reasonably necessary to repel the alleged attack. A defendant may only use "that force which is reasonably necessary to repel the attack." *State v. Williford*, 49 Ohio St.3d 247, 249 (1990). Mere words do not justify the use of force; indeed, even vile or abusive language or verbal threats, no matter how provocative, do not justify an assault. *State v. Rothermel*, 2014-Ohio-3168, ¶ 15 (2d Dist.). The defense of self-defense is unavailable if the defendant uses more force than is reasonably necessary or if the force applied is greatly disproportionate to the apparent danger. *Id.*

{¶25} Here, the record demonstrates that Laidlaw continued to strike C.D. repeatedly even after C.D. was effectively neutralized. *See id.* at ¶ 17-19. Indeed, C.D. testified that Laidlaw pinned him to the floor, placed a hand on his throat, and delivered roughly four "overhead" punches to his face while he was defenseless. (Apr. 15, 2025 Tr.,Vol. I, at 48). And this account was corroborated by Francisco's testimony. The medical evidence also corroborates this disparity in force. C.D. suffered a fractured sinus, a scalp laceration leaving a scar, an eye swollen shut, and significant bruising. The injuries were severe enough to warrant testing for a brain

-12-

bleed and life-threatening heart complications, and required the administration of fentanyl and oxycodone for pain. *See State v. Barnes*, 2023-Ohio-3706, ¶ 16 (5th Dist.).

{¶26} Therefore, based on our review of the record, we conclude that the trier of fact did not lose its way by rejecting Laidlaw's claim of self-defense. Importantly, the jury heard all of the testimony and found the State's witnesses and evidence to be more credible than Laidlaw's. Accordingly, weighing the evidence and all reasonable inferences, we conclude the jury did not clearly lose its way and create such a manifest miscarriage of justice that Laidlaw's conviction must be reversed.

{¶27} Laidlaw's third assignment of error is overruled.

**First Assignment of Error**

**The trial court erred in submitting to the jury a jury verdict form that omitted any inquiry regarding self-defense. (R. 94, 87, and 83; Tr. Tr. V.2 at p. 207, ll. 18-25 and p. 208, ll. 1-22).**

**Second Assignment of Error**

**The trial court erred in changing the jury verdict form mid-jury deliberation and causing confusion to the jurors that prejudiced Mr. Laidlaw. (R. 94, 87, and 83; Tr. V.2 at p. 207, ll. 18-25 and p. 208 ll. 1-22).**

{¶28} In his first and second assignments of error, Laidlaw argues that the trial court erred by failing to provide a verdict form that included a specific finding regarding self-defense. Specifically, in his first assignment of error, Laidlaw urges

this court to reconsider its precedent in *State v. Bender*, in which we determined that a separate jury finding is not required for claims of self-defense. 2024-Ohio-1750, ¶ 74 (3d Dist.). Laidlaw further argues in his second assignment of error that the trial court erred by altering the verdict form mid-deliberation, contending that this action confused the jury regarding their duty to consider self-defense.

*Standard of Review*

{¶29} In general, a trial court has broad discretion in determining how to instruct the jury, including the content and design of verdict forms. *State v. Wilson*, 2010-Ohio-2294, ¶ 8 (3d Dist.); *State v. DeMastry*, 2003-Ohio-5588, ¶ 72 (5th Dist.). Accordingly, we review a trial court's decision regarding jury instructions for an abuse of discretion. *Wilson* at ¶ 8. An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

{¶30} However, because Laidlaw did not object to the verdict form at trial, he forfeited all but plain error on appeal. *Accord State v. Eafford*, 2012-Ohio-2224, ¶ 11. Under Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "We recognize plain error with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *State v. Harrison*, 2015-Ohio-1419, ¶ 69 (3d Dist.). "'For plain error to apply, the trial court must have deviated from a legal rule, the error must have been an obvious defect in the proceeding, and

the error must have affected a substantial right.'" *Id.*, quoting *State v. Vielma*, 2012-Ohio-875, ¶ 34 (3d Dist.). "'Under the plain error standard, the appellant must demonstrate that the outcome of his trial would clearly have been different but for the trial court's errors.'" *Id.*, quoting *Vielma* at ¶ 34.

**{¶31}** When reviewing a trial court's jury instructions (and verdict forms) under the plain-error standard, "'"an appellate court must review the [jury] instructions as a whole and the entire record to determine whether a manifest miscarriage of justice has occurred as a result of the error in the instructions."'" *State v. Smith*, 2023-Ohio-1296, ¶ 38 (8th Dist.), quoting *State v. Nicholson*, 2022-Ohio-2037, ¶ 137 (8th Dist.). "An improper or erroneous jury instruction does not constitute plain error unless, but for the error, the outcome of the trial would clearly have been different." *Id.*

*Analysis*

**{¶32}** "While a trial court has broad discretion to determine how it will instruct a jury, the court has a duty to 'fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder.'" *State v. Torres*, 2002 Ohio App. LEXIS 1218, *7 (3d Dist. Mar. 18, 2002), quoting *State v. Comen*, 50 Ohio St.3d 206, 210 (1990). "Requested jury instructions should ordinarily be given if they are correct statements of law, if they are applicable to the facts in the case, and if reasonable

minds might reach the conclusion sought by the requested instruction."  *State v. Adams*, 2015-Ohio-3954, ¶ 240.

**{¶33}** Here, Laidlaw requests that this court diverge from its precedent in *State v. Bender*, in which we determined that, notwithstanding the change in Ohio's self-defense law, there remains no requirement for a separate jury finding in trials with claims of self-defense.  2024-Ohio-1750, at ¶ 74 (3d Dist.).  We decline to diverge from this precedent.  Indeed our sister appellate districts have continued to follow this principle regardless of the change to the State's burden when a self-defense claim is raised at trial. *See State v. Midkiff*, 2022-Ohio-4004, ¶ 26 (2d Dist.) (resolving that "there is no rule that states there must be a separate finding or form for self-defense"); *State v. Edwards*, 2025-Ohio-641, ¶ 91 (8th Dist.) ("Edwards has not pointed us to any legal authority requiring a separate verdict form for the defense of self-defense, nor can we find any.").  Consequently, we conclude that the absence of a separate finding on the issue of self-defense on the verdict form in this case was not error let alone plain error.  *Accord Bender* at ¶ 74.

**{¶34}** Laidlaw further argues in his second assignment of error that the trial court committed plain error by altering the verdict form during deliberations, which he contends caused jury confusion.  Specifically, Laidlaw challenges the trial court's decision to remove the requirement that the jury make a specific finding regarding self-defense before reaching a verdict on the felonious assault charge.  He contends that he was prejudiced because the amended verdict form required only a general

finding of guilty or not guilty, thereby removing the separate self-defense prompt entirely. He argues that actual prejudice was demonstrated when the jury subsequently asked if self-defense had been removed from the decision, prompting the trial court's clarification that it was not.

{¶35} However, we need not review whether the trial court committed any error in its verdict form because Laidlaw agreed to the verdict form, including its revision. "Under the invited-error doctrine, a party will not be permitted to take advantage of an error that he himself invited or induced the trial court to make." *State v. Chavez*, 2020-Ohio-426, ¶ 61 (3d Dist.), quoting *State ex rel. Beaver v. Konteh*, 83 Ohio St.3d 519, 521 (1998). Here, Laidlaw invited any error with the verdict form or its revision. *Accord id.* Indeed, Laidlaw's trial counsel affirmatively agreed to the removal of the separate finding from the verdict form and further participated in crafting the response to the jury's question. *See State v. Akers*, 2019-Ohio-5171, ¶ 32 (3d Dist.) ("A jury is presumed to follow a trial court's instructions, including curative instructions."). Thus, Laidlaw cannot now take advantage of any error with the trial court's verdict form or its revision.

{¶36} Moreover, the trial court permitted Laidlaw's counsel to specifically inquire regarding the jury's question following the verdict, and the jury responded that the trial court's answer sufficiently clarified its confusion. Consequently, the record affirmatively demonstrates that the issue was resolved and that Laidlaw suffered no prejudice.

{¶37} Laidlaw's first and second assignments of error are overruled.

**Fourth Assignment of Error**

**Defendant was denied the effective assistance of counsel at trial.
(R. 94, 87, 83; Trial Tr. V.1 and V.2 *passim*)**

{¶38} In his fourth assignment of error, Laidlaw argues that his trial counsel was ineffective in his handling of the verdict forms and by failing to request an instruction on the inferior degree offense of aggravated assault.

*Standard of Review*

{¶39} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 687. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Rather, the errors complained of must amount to a substantial violation of counsel's essential

duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989), quoting *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976), *vacated in part on other grounds*, 438 U.S. 910 (1978).

**{¶40}** "Prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Liles*, 2014-Ohio-259, ¶ 48 (3d Dist.), quoting *Bradley* at 142, citing *Strickland* at 691. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Bradley* at 142 and citing *Strickland* at 694.

*Analysis*

**{¶41}** First, Laidlaw's trial counsel was not ineffective in his handling of the verdict forms—whether by failing to object to the initial version or by actively participating in their amendment. Decisively, as we determined in our analysis of Laidlaw's first assignment of error, notwithstanding the change in Ohio's self-defense law, there remains no requirement for a separate jury finding in trials involving claims of self-defense. Because the law does not mandate a separate finding of self-defense, Laidlaw's trial counsel cannot be deemed ineffective for failing to demand one or for proposing the removal of the separate finding.

**{¶42}** Turning to Laidlaw's contention that his trial counsel was ineffective for failing to request a jury instruction on aggravated assault as an alterative (or inferior degree offense) to felonious assault, we likewise reject his contention.

Generally, an instruction on aggravated assault is warranted when sufficient evidence of serious provocation exists. *State v. Howton*, 2017-Ohio-4349, ¶ 39 (3d Dist.). However, irrespective of the sufficiency of the evidence demonstrating serious provocation in this case, the failure to request such an instruction falls squarely within the ambit of reasonable trial strategy. *See State v. Hecox*, 2022-Ohio-2325, ¶ 51 (3d Dist.).

{¶43} Determinately, because Laidlaw's theory of the case was that he acted in self-defense, seeking an instruction on aggravated assault would have been inconsistent with his claim of complete innocence. Indeed, as this court has previously observed, if the jury had determined that the State failed to disprove self-defense, the defendant would have been acquitted of all charges. *Id.* at ¶ 50. Thus, an instruction on an alternative theory—admitting to the assault but claiming provocation—might have undermined a steadfast self-defense claim. *Id.* Such a decision clearly falls within the ambit of trial strategy, and we will not find ineffective assistance of counsel simply because the strategy was unsuccessful. *Id.*

{¶44} For these reasons, Laidlaw's trial counsel was not ineffective.

{¶45} Laidlaw's fourth assignment of error is overruled.

{¶46} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**WILLAMOWSKI and WALDICK, J.J., concur.**

-20-

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. *See* App.R. 30.

William R. Zimmerman, Judge

John R. Willamowski, Judge

Juergen A. Waldick, Judge

DATED:
/hls